UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
LIA PISTILLI,

                         Plaintiff,

-against-

FIRST UNUM LIFE INSURANCE
COMPANY,

                         Defendant.
------------------------------------------------------------ x

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

24 Civ. 5266 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

      Plaintiff Lia Pistilli sues to require Defendant First Unum Life Insurance Company ("First Unum") to accept her claim to be entitled to long-term disability benefits, claiming a violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*. Defendant denies that she is so entitled. The parties both move for judgment, having stipulated to an agreed administrative record. *See* Fed. R. Civ. P. 52. I have read the record and the parties' briefs, and pursuant to my Order making a finding of good cause, I have also heard Plaintiffs' testimony. *See* ECF No. 38. For the reasons explained below, I grant Defendant First Unum's motion and deny that of Plaintiff.

## FINDINGS OF FACT

1. Pistilli, age 52, was a corporate finance attorney. She was hired by Davis Polk & Wardwell LLP ("Davis Polk") on May 2, 2022 as an associate to work in its corporate finance department. She worked for the firm until July 11, 2022. ECF No. 29-1 at 4, 7.

2. As an employment benefit, Pistilli received disability insurance coverage from First Unum, based on her monthly earnings of $33,333.24. *See* ECF Nos. 29-1 at 6; 29-12.

1

3. Pistilli experienced a motor vehicle accident on July 8, 2022, in which her vehicle was rear-ended by another car while stopped at a traffic light. *Id.* at 313-14.

4. Later that day, Pistilli visited an urgent care center, complaining of headache, nausea, and neck pain. ECF No. 29-2 at 165-66. She denied losing consciousness, shortness of breath or experiencing a change in vision, and she stated that she was wearing her seatbelt and that her vehicle's airbag did not deploy. *Id.* Nurse Practitioner Lesliann Barabash documented that Pistilli's symptoms were likely secondary to a concussion, and recommended that she rest her brain and refrain from television, computers and texting. *Id.*

5. Pistilli had a telemedicine video appointment with Dr. Sun-Hoo Foo, a neurologist affiliated with the New York University Langone Health System, on July 19, 2022. *Id.* at 125. At this appointment, Pistilli reported feeling "spacy," and stated that she could not concentrate or perform work as an attorney. *Id.* Pistilli had previously seen Dr. Foo in 2019 and 2020, while working as an attorney at another international law firm, for complaints of persistent, severe headaches, nausea, vision loss and vomiting. *Id.* at 136.

6. At follow-up appointments with Dr. Foo on July 28, 2022, August 18, 2022, and September 23, 2022, Pistilli reported that little had changed. *Id.* at 130, 135. She told Dr. Foo that her symptoms were better in the morning, but that she experiences exhaustion from managing a single task, cannot watch television, sleeps all day, and has not been able to work since the car accident. *Id.*

7. After her accident, Pistilli applied to First Unum for short-term disability benefits, and was paid for 26 weeks of short-term benefits. *See* ECF No. 29-1 at 359.

2

8. On December 14, 2022, First Unum wrote to Pistilli that her short-term disability benefits were set to expire, and that First Unum would conduct a review of her eligibility for long-term disability benefits. *Id.* at 71-72.

9. Since Pistilli had been employed by Davis Polk for less than five years, she fell into Class 4 of First Unum's long-term disability policy (the "LTD Policy"). *See* ECF Nos. 29-1 at 173; 29-12 at 5. Under the LTD Policy, if found eligible for benefits, she would have been entitled to up to 60 percent of her monthly earnings, capped at $25,000 per month. ECF No. 29-12 at 4-5.

10. Under the LTD Policy, the terms "disability" and "disabled" are defined to "mean that because of injury or sickness[,] the insured cannot perform each of the material duties of her regular occupation." *Id.* at 16. Furthermore, for attorneys, the term "regular occupation" is defined as "the specialty in the practice of law which the insured was practicing just prior to the date disability started." *Id.*

11. The LTD Policy provided that "[i]n making any benefits determination under this policy, [First Unum] shall have the discretionary authority both to determine an employee's eligibility for benefits and to construe the terms of this policy." *Id.* at 10.

12. At Dr. Foo's request, neurologist Dr. Daniel Friedman conducted an electroencephalogram ("EEG") of Pistilli's brain, to measure electrical activity in the brain, on August 10, 2022. *See* ECF No. 29-2 at 124. He diagnosed her as "normal" with no epileptiform activity, seizures, or other clinical events detected. *Id.*

13. At Dr. Foo's request, radiologist Dr. Karen Weingarten performed a magnetic resonance imaging ("MRI") scan of Pistilli's brain on September 28, 2022. *See id.* at 121. She found

3

that there was no significant change compared with a prior study of Pistilli's brain conducted in 2019, several years before her car accident. *Id.*

14. Physiatrist Dr. Tiffany Wong also examined Pistilli on October 13, 2022. She found Pistilli to be anxious, but noted her history of taking anti-anxiety medication. ECF No. 29-1 at 91-92. She diagnosed Pistilli with a concussion and recommended aerobic exercise, over-the-counter medication, ginger tea, proper hydration, nutritious meals, and occasional, brief breaks while working. *Id.* at 92-94. Dr. Wong recommended that Pistilli refrain from working until she made further progress. ECF No. 29-2 at 38.

15. Pistilli also saw neuropsychologist Dr. Laura Tabio on October 27, 2022, November 2, 2022, and November 16, 2022, who performed a variety of tests. *See* ECF Nos. 29-2 at 272-76; 29-7 at 41-52. Dr. Tabio found that Pistilli's intellectual functioning following the car accident remained within the expected ranges for verbal and non-verbal reasoning abilities. ECF No. 29-7 at 41-52. She noted cognitive decline in learning and memory, and was unable to conclusively attribute Pistilli's neuropsychological functioning to her car accident since Pistilli had pre-existing neurological issues. *Id.* at 45. Dr. Tabio observed that Pistilli's response pattern was inconsistent, potentially indicative of "overreporting" of complaints. *Id.* at 44.

16. Pistilli also visited an occupational therapist, Kristen Arborio; a speech language pathologist, Jessica Feinman; and a physical therapist, Artmis Youssefnia, for therapy on various dates between September 2022 and February 2023. *See* ECF Nos. 29-1 at 126-49; 29-2 at 234-93.

4

17. Pistilli underwent minimally-invasive heart surgery in March 2023 to remove a pericardial cyst. *See* ECF No. 29-5 at 173-89. Shortly thereafter, she was diagnosed with acute pulmonary emboli in one of her lungs. *Id.* at 179.

18. After reviewing the foregoing evidence, First Unum officials met and determined, on February 28, 2023, that it was "unclear" if the evidence in Pistilli's file supported her claim. *Id.* ECF No. 29-5 at 24

19. On March 3, 2023, First Unum wrote to Drs. Foo and Wong, Pistilli's physicians, requesting more information as to the bases of their opinions, given the sedentary nature of her job and the minor nature of her car accident. *Id.* at 27-33. Dr. Foo did not respond.

20. Dr. Wong responded by checking a response box indicating that she believed that Pistilli could not perform her occupational duties. *Id.* at 80. In response to the sole question on First Unum's form, "what specifically . . . about Ms. Pistilli's medical condition precludes the occupational demands outlined above on a full-time basis as of 7/9/22 and beyond," and to "identify clinical, diagnostic or other medical information that supports your opinion," Dr. Wong responded that Dr. Tabio's testing "recommended cognitive remediation. She is still on the waitlist. Please see attached," and appended Dr. Tabio's report to the form. *Id.* at 83-86.

21. First Unum requested and received a copy of Dr. Tabio's neuropsychological examination with table scores, *id.* at 95, and referred Pistilli's file to neuropsychologist Dr. Malcolm Spica for a review of Dr. Tabio's testing, ECF No. 29-7 at 83.

22. Dr. Spica opined that Dr. Tabio's neuropsychological evaluation "appears invalid" and suggests "extreme levels of symptom exaggeration." *Id.* at 84. He based his opinion on several features of Dr. Tabio's report and evaluation, including her qualification that

Pistilli's "results may underestimate her abilities," her lack of a diagnosis of a neurocognitive disorder, her remarks as to Pistilli's "variable effort" during neuropsychological testing, and that Pistilli performed "well within normal limits" on assessments "in the areas Dr. Tabio listed as weaknesses," which is "inconsistent with a debilitating neurocognitive disorder." *Id.* at 84-85. He concluded that Pistilli's performance was "within the normal limits across domains," even on assessments "known to be sensitive to cerebral compromise." *Id.* at 85.

23. Dr. Andrea Brown, a medical consultant for First Unum, issued her peer review report of Pistilli's file on May 15, 2023. *Id.* at 87-91. She found, within a reasonable degree of medical certainty, that the restrictions and limitations reported by Pistilli were not supported by her providers' examinations, and did not comport with her accident. *Id.* at 89. Dr. Brown noted that Pistilli had not seen her neurologist since September 2022, and did not seek care from an optometrist or ophthalmologist for her complaints of blurred vision. *Id.* at 90. Dr. Brown also opined that the results of Dr. Tabio's neuropsychological evaluation suggested Pistilli was exaggerating her symptoms, and that Pistilli's performance was within normal ranges. *Id.*

24. First Unum also referred Pistilli's file to Dr. Jamie Lewis, a specialist in physical medicine and rehabilitation, for a second opinion. *Id.* at 94-99. He concurred with Dr. Brown's peer review opinion on May 18, 2023, noting the minor nature of Pistilli's car accident, that Dr. Foo's examination of Pistilli was only virtual, that Pistilli had normal gait, balance, strength, sensation and reflexes when Dr. Wong examined her, and that Pistilli's complaints of a concussion were not supported by consistent clinical findings. *Id.* Dr. Lewis agreed with Dr. Brown's conclusion. *Id.* at 98-99.

25. Next, a First Unum quality control officer reviewed Pistilli's file and directed outreach to Pistilli's occupational therapist, Kristen Arborio, and her psychiatrist, Dr. Jeffrey Hammerman—who had prescribed Pistilli with medications prior to the date of her car accident—to ascertain whether they had an opinion as to Pistilli's purported restrictions and limitations. *Id.* at 111-12. Both told First Unum officials that they had no opinion. *Id.* at 125.

26. Thus, the only physician who rendered an opinion in response to First Unum's inquiries as to Pistilli's restrictions and limitations was Dr. Wong, whose terse and conclusory opinion was primarily based on Dr. Tabio's neuropsychological examination and not her own findings.

27. By letter dated June 20, 2023, First Unum notified Pistilli of its decision to deny her long-term disability benefits since it found that she was not precluded from performing the material duties of her normal occupation as a corporate finance attorney. *Id.* at 137-45.

28. Pistilli filed an appeal of First Unum's denial of benefits on Friday, December 15, 2023. *See* ECF No. 29-7 at 205-16. First Unum received Pistilli's appeal on Monday, December 18, 2023.[1] *See* ECF Nos. at 29-9 at 131; 29-10 at 3. In her appeal, Pistilli argued that she was disabled since she could not perform the duties of her regular occupation as a corporate finance attorney. She claimed that she cannot read with a high level of attention to detail, look at a computer screen for an extended period of time, or meet high-level cognitive demands. ECF No. 29-7 at 205-16.

---

[1] First Unum noticed that some pages of the documents that Pistilli filed in support of her appeal were missing on January 9, 2024, and promptly alerted Pistilli to obtain them. *See* ECF No. 29-10 at 38-43.

7

29. At the advice of her attorneys, Pistilli visited neuropsychologist Dr. Wilfred van Gorp on September 1 and 2, 2023 to obtain a new neuropsychological evaluation, and attached his report to her appeal. *Id.* at 234-45. Dr. van Gorp recounted the symptoms that Pistilli reported to her, and noted that Pistilli was fatigued throughout the testing, requiring frequent breaks. *Id.* at 234-37. He concluded that, based on his evaluation of Pistilli, she had "selective but significant cognitive deficits." *Id.* at 239. Dr. van Gorp noted that the etiology of these deficiencies was not clear and was inconsistent with the nature of Pistilli's car accident. *Id.* He concluded that "it is clear that Ms. Pistilli is unable to work at this time as an attorney." *Id.* at 240.

30. Pistilli visited neuro-opthamologist Dr. Nancy Blace on June 27, 2023, who opined that there was "no significant change" between her September 2022 MRI and the MRI conducted of her brain in November 2019, and remarked that the results of her eye exam were "significant for convergence disorder and photophobia, but is otherwise benign." ECF No. 29-8 at 43-47. Dr. Blace noted that these symptoms would generally be "expected to improve if not resolve," and recommended Pistilli wear special glasses. *Id.*

31. In November 2023, Pistilli was evaluated by neuroradiologist Dr. Roshni Patel. Dr. Patel recounted Pistilli's history, and noted that Pistilli continues to suffer from headaches and vision issues, which have been remediated by glasses. *Id.* at 246-66. Dr. Patel diagnosed Pistilli with post-concussive syndrome and convergence insufficiency stemming from the July 2022 car accident, and opined that as a result of her traumatic brain injury, she did not believe that Pistilli could perform the occupational functions of her position at Davis Polk. *Id.* at 262-66.

32. Pistilli also attached an undated letter from neurologist Dr. Shateu Datta recounting Pistilli's history and symptoms. *Id.* at 313-14. Dr. Datta averred that the volumetric brain analysis conducted in August 2023 was abnormal, revealing significant changes in brain structure and volume. *Id.* at 314. But Dr. Datta did not explain why she so concluded, and her letter contradicts Drs. Blace and Weingarten's findings that, based on her analysis of this same MRI study of Pistilli's brain, there was no significant change compared to a prior study conducted in 2019, several years prior to Pistilli's car accident. ECF No. 29-2 at 121. Indeed, though the header on Dr. Foo's notes is date stamped to July 19, 2022, the brain MRI image is listed as having occurred on November 23, 2019. *Id.* at 126.

33. Pistilli also included a symptom diary, recounting the symptoms she experienced between July 29, 2022 and October 15, 2022, *see* ECF No. 29-9 at 78-88, and her prescription history, *see* ECF No. 29-10 at 137-45.

34. Pistilli appended a detailed affidavit, dated December 15, 2023, explaining her symptoms, efforts at seeking treatment, and the occupational demands of her position at Davis Polk, which she avers she is precluded from executing by virtue of her condition. ECF No. 29-9 at 89-98. Specifically, she stated that her symptoms have not ameliorated since her car accident, that her pain is excruciating, and that she cannot perform even the simplest of activities, much less work as a corporate finance attorney. *Id.* Her appeal also included "witness statements" from her significant other, brother, daughter, and daughter's best friend, attesting to her cognitive decline since the July 2022 car accident. *Id.* at 89-104; ECF No. 29-10 at 41-43.

35. In response to Pistilli's appeal, First Unum consulted neuropsychologist Dr. Edan Critchfield to review the record. In his report of January 30, 2024, he opined that Dr.

9

Tabio's and Dr. van Gorp's neuropsychological testing results were not valid, and that they had failed to consider that Pistilli's TOMM T2 test for malingering was 46/50, and that her memory scores were much lower than what reasonably should have been expected to result from her reported concussion. *Id.* at 73-74. He also underscored Dr. van Gorp's comments, that the results of his evaluation indicate that Pistilli's "complaints of memory problems may exceed that which objectively may be found to be present." *Id.* Dr. Critchfield concluded that Pistilli's records do not reflect any symptoms that would account for Pistilli's cognitive complaints. *Id.* at 74.

36. A First Unum occupational specialist conducted a vocational analysis of Pistilli's role on January 23, 2024, based on information provided by Davis Polk. *Id.* at 154-56.

37. Registered nurse Susan Grover, also reviewing the record, opined on January 30, 2024 that the mechanism of injury Pistilli sustained is not consistent with that which would cause a concussion, and did not support the restrictions and limitations of which Pistilli complained. *Id.* at 162-74. She referred Pistilli's file to a physician for an additional layer of review. *Id.* at 173.

38. Dr. Howard Grattan, a physician board-certified in physical medicine and rehabilitation, also opined on February 7, 2024 that the record did not support Pistilli's proffered restrictions and limitations. *Id.* at 176-83.

39. First Unum asked Pistilli's attorney on January 16, 2024 for Pistilli's behavioral health records of psychiatric treatment prior to her car accident. *See* ECF No. 29-10 at 44. Pistilli refused to produce records of her psychiatric treatments and visits prior to her car accident, despite requests from First Unum; on January 31, 2024, Pistilli's attorney answered that Pistilli would not submit her psychiatric records. *Id.* at 97.

40. First Unum wrote Pistilli on January 22, 2024, within 45 days from the date Pistilli filed her appeal, stating that it needed 45 more days to consider her appeal, beginning January 29, 2024, and ending March 14, 2024. *Id.* at 67.

41. First Unum wrote that it needed this extension "to complete a thorough, fair, and accurate appeal review," such to provide its staff with sufficient time to complete their reviews of Pistilli's file, including the additional information that Pistilli had recently submitted on appeal; to permit Pistilli to respond to First Unum's preliminary decision on appeal based on the additional information she submitted; and to obtain the psychiatric records that it previously requested from Pistilli. *Id.* Pistilli objected to this extension by letter of January 31, 2024. *Id.* at 95-98.

42. On February 7, 2024, 54 days after Pistilli filed her appeal, First Unum informed Pistilli of its belief that she did not qualify for long-term disability benefits, and invited Pistilli's response. *Id.* at 190-91.

43. On February 22, 2024, in response to First Unum's preliminary decision on appeal, Pistilli's attorney submitted an addendum from Dr. Patel, and a response from Dr. van Gorp as to Dr. Critchfield's review findings, both dated February 18, 2024, after the date on which First Unum sent its preliminary denial decision. ECF No. 29-11 at 57-69.

44. Dr. Patel disputed First Unum's position that Pistilli did not qualify for long-term disability benefits. She opined that Pistilli suffers from convergence insufficiency, a condition in which "the eyes do not work together while focusing on a near object." *Id.* at 59-60. And she further opined that First Unum's reviewers overlooked "the critical impact of memory, concentration, and processing speed deficits on [Pistilli's] ability to perform her duties." *Id.* at 59-67.

11

45. Dr. van Gorp responded to Dr. Critchfield's critique of his findings. He noted that Dr. Critchfield did not personally interview or examine Pistilli, and averred that Pistilli passed the Test of Malingering, since he believes that the article Dr. Critchfield cited recommends utilizing an unduly high cutoff score. *Id.* at 68-69. Accordingly, Dr. van Gorp argues that his examination of Pistilli was valid. *Id.* at 69-70.

46. First Unum denied Pistilli's appeal on February 26, 2024, 70 days after the date on which First Unum received Pistilli's appeal. *Id.* at 73-85.

47. In denying Pistilli's appeal, First Unum held that she had not shown that she was disabled under the LTD Policy, and pointed to the minor severity of her motor vehicle accident, the inconsistency of her symptoms with the accident's mechanism of injury, the lack of documented abnormalities in cognitive and diagnostic testing, and the inconsistencies that Drs. Grattan and Critchfield pointed to with respect to her neuropsychological evaluations. *Id.* at 77-78. The LTD Policy was subject to a pre-existing condition review, which was not completed. *Id.* at 79.

48. Pistilli testified, and was subject to cross-examination from Defendant's counsel, on September 8, 2025. She had normal gait, and was able to focus for well over two hours of direct and cross-examination. I found her testimony as to her symptoms to be generally credible. Pistilli testified to the recurrence of daily, debilitating headaches, which interfere with her major life activities, including her ability to drive a car, read, brush her teeth and shower. She testified that, before her car accident, she previously experienced severe, painful headaches for many years, including while working as a corporate attorney for other large, international law firms, but that the headaches that she has experienced after the car accident have been harder to ameliorate. She testified also that

as a result of her headaches, she cannot return to work and is unable to function as a corporate finance attorney.

## CONCLUSIONS OF LAW

### A. Standard of Review

In an action for a denial of benefits under ERISA, if the written benefit plan provides the administrator with discretionary authority to make eligibility determinations, a claim for denial of benefits will be overturned by federal courts only if found to be arbitrary and capricious. *Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 82 (2d Cir. 2009). If the written plan documents provide no such authority, a claim for denial of benefits will be reviewed *de novo* by a court. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

Here, the LTD Policy provides that "[i]n making any benefits determination under this policy, [First Unum] shall have the discretionary authority both to determine an employee's eligibility for benefits and to construe the terms of this policy." ECF No. 29-12 at 10. Accordingly, the written plan documents here provide First Unum's administrator with the discretion to make eligibility determinations.

But even if a benefit plan's documents confer discretionary authority upon its administrator, if the plan failed to comply with the Department of Labor's claims procedure regulations (the "DOL regulations"), 29 C.F.R. § 2560.503-1, a claim for the denial of benefits will be reviewed *de novo* in federal court "unless the plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the regulation in the processing of a particular claim was inadvertent *and* harmless." *Halo v. Yale Health Plan*, 819 F.3d 42, 45 (2d Cir. 2016) (emphasis in original).

13

### B. Pistilli's Arguments for *De Novo* Review

Pistilli argues that, notwithstanding the discretionary authority provided by the LTD Policy, First Unum violated the DOL regulations in its review of her claim in three respects, and that these violations were not inadvertent and harmless. Specifically, she argues that First Unum, in ruling on her appeal, did not (1) consult with qualified medical reviewers; (2) provide for an impartial review by independent reviewers; and (3) render a timely decision, since it granted itself an impermissible extension. These contentions lack merit.

#### 1. Qualifications of Medical Reviewers

The DOL regulations require insurers to "consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment" in deciding a benefit appeal. 29 C.F.R. § 2650-503-1(h)(3)(iii). Pistilli argues that First Unum contravened this regulation by utilizing a nurse to review her claim. The deference given to a nurse's findings is less than that which would be accorded to a physician. *Fichtl v. First Unum Life Ins. Co.*, 22 Civ. 6932 (JLR), 2024 U.S. Dist. LEXIS 54069, at *43-44 (S.D.N.Y. Mar. 26, 2024). But the fact that First Unum delegated its initial appellate review of Pistilli's file to a nurse, before referring it to Dr. Grattan, whose qualifications are uncontested, does not taint First Unum's decision. *See Tietjen v. Unum Life Ins. Co. of Am.*, 16 Civ. 7021 (JMF), 2017 U.S. Dist. LEXIS 157721, at *9-10 (S.D.N.Y. Sept. 26, 2017). Accordingly, First Unum, in conducting its appellate review, properly consulted health care professionals with appropriate medical training and experience, in compliance with the DOL regulations.

#### 2. Independence of Reviewers

The DOL regulations also require insurers to "ensure that all claims and appeals for disability benefits are adjudicated in a manner designed to ensure the independence and

14

impartiality of the persons involved in making the decision." 29 C.F.R. § 2560.503-1(b)(7). To this end, Pistilli argues that since the physicians and psychologists who reviewed her file on behalf of First Unum were paid by the insurer, their opinions lack impartiality and independence. But that mere fact does not automatically make *de novo* review appropriate. *McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 133 (2d Cir. 2008). It is customary for plan administrators to compensate medical reviewers, and such a structural conflict of interest, without more, does not violate the DOL regulations. *Hobson*, 574 F.3d at 83. Here, Pistilli has not pointed to any evidence to support her bald accusation that First Unum cherry-picked medical providers to support a denial, and her claim of a structural conflict, without more, does not entitle her to *de novo* review. *See, e.g., Archer v. Hartford Life & Accident Ins. Co.*, 18 Civ. 1158 (WFK), 2021 U.S. Dist. LEXIS 98981, at *23 (E.D.N.Y. May 25, 2021); *Doe v. Blue Cross Blue Shield of Mass., Inc.*, 07 Civ. 4023 (RJS), 2010 U.S. Dist. LEXIS 37153, at *19 (S.D.N.Y. Apr. 12, 2010).

### 3. Timeliness of Decision

Finally, the DOL regulations require a disability benefit plan administrator to decide an appeal of a benefit denial within 45 days "after receipt of the claimant's request for review by the plan, unless the plan administrator determines that special circumstances . . . require an extension of time for processing the claim." 29 C.F.R. §§ 2650.503-1(i), (i)(3)(i). This one-time extension may not exceed 45 days from the end of the initial 45-day review period, for an aggregate of 90 days. *Id.* "If the plan administrator determines that an extension of time for processing is required, written notice of the extension" must be provided to the claimant, and must "indicate the special circumstances requiring an extension of time." 29 C.F.R. § 2560.503-1(i)(1)(i).

Pistilli argues that First Unum did not timely rule on her appeal, since it impermissibly gave itself a 45-day extension. But under the plain text of the regulation, 29 C.F.R. § 2560.503-

15

1(i)(1)(i), the determination of whether the individual circumstances of an appeal warrant an extension is for the plan administrator to make, in his sole discretion. *See Holmes v. Colo. Coalition for the Homeless Long Term Disability Plan*, 762 F.3d 1195, 1206 (10th Cir. 2014) ("ERISA's regulations governing extensions of time and calculating time periods on review place with the plan administrator the sole discretion to determine whether special circumstances exist requiring an extension of time for decision."). "[A]n extension may be imposed only for reasons beyond the control of the plan," *Salisbury v. Prudential Ins. Co. of Am.*, 238 F. Supp. 3d 444, 449 (S.D.N.Y. 2017), as opposed to circumstances that are within the plan's control, such as "delays caused by cyclical or seasonal fluctuations in claims volume." ERISA Rules and Regulations for Administration and Enforcement; Claims Procedures, 65 Fed. Reg. 70,246, 70,250 (Nov. 21, 2000).

Here, within the initial 45-day period following Pistilli's appeal, First Unum gave itself a 45-day extension "to complete a thorough, fair, and accurate appeal review," so as to provide its staff with sufficient time to complete their reviews of Pistilli's file, including the additional information that Pistilli had recently submitted on appeal; to permit Pistilli to respond to First Unum's preliminary decision on appeal based on the additional information she submitted; and to obtain the behavioral health records that it had requested from Pistilli. *See* ¶ 42, *supra*. And First Unum ultimately ruled on Pistilli's appeal well within 90 days from the date Pistilli filed it. *See* ¶ 47, *supra*.

Such an extension is particularly appropriate, where, as here, there is a need for a fuller, good faith examination of a beneficiary's claims before an insurer makes its final determination. Pistilli's appeal presented new facts and issues, beyond First Unum's control, which it had to consider, thereby necessitating an extension. That was not the case in *Rappaport v. Guardian*

16

*Life Ins. Co.*, 22 Civ. 8100 (JLR), 2024 U.S. Dist. LEXIS 212996 (S.D.N.Y. Nov. 22, 2024), where Judge Jennifer L. Rochon held that an insurer violated the DOL regulations in granting itself an extension to conduct "a financial review for LTD benefits." *Id.* at *42-44. Pistilli's subjective complaints of enduring and disabling pain required First Unum to consider the opinions of additional medical experts, and that took time. Thus, it was appropriate for First Unum to extend its time to rule on Pistilli's appeal in order to perform a thorough review of her claim.

I find that First Unum acted in good faith. It had every incentive to summarily deny Pistilli's claim within the 45-day initial period, thereby ensuring its decision would be subject to the more deferential arbitrary and capricious standard of review. But that is not what it did here. The record shows that First Unum's medical and psychological consultants meticulously reviewed Pistilli's file and carefully considered her claim. First Unum engaged in an interactive process with Pistilli, notifying her when it needed missing information, and providing her with the opportunity to submit additional evidence. First Unum's diligence should not be penalized, for the entire purpose of the regulation is to provide "speedy decisionmaking [as] a crucial protection for claimants who need either medical care or the replacement income that disability benefits provide." ERISA Rules and Regulations for Administration and Enforcement; Claims Procedures, 65 Fed. Reg. at 70,247. It is crucially important for institutions to work properly, and to be allowed time to do so.

Thus, since First Unum complied with the DOL regulations governing the adjudication of claim appeals, the deferential arbitrary and capricious standard of review governs this case.

17

## C. Discussion

Applying the arbitrary and capricious standard, First Unum's decision to deny Pistilli's claim was not "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Hobson*, 574 F.3d at 83. Substantial evidence is "such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decisionmaker and requires more than a scintilla but less than a preponderance." *Miller v. United Welfare Fund*, 72 F.3d 1066, 1072 (2d Cir. 1995). Under this standard, the "scope of review is narrow," and the Court is "not free to substitute [its] own judgment for that of" First Unum. *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995).

Pistilli claims she is disabled because of a car accident, but issues of severe headaches had plagued her for long before this accident. First Unum's decision to deny her long-term disability benefits because of the accident is reasonable, and is supported by substantial evidence. Pistilli has produced considerable subjective evidence of head pain, but the objective evidence does not support her claim that, because of the accident, she no longer can perform the duties of a corporate finance attorney. She experienced a low-velocity, rear-end motor vehicle accident, was wearing a seatbelt, did not lose consciousness, and her car's airbags did not deploy. She complains of severe, debilitating symptoms from this minor car crash, but testified that she experienced debilitating headaches and severe pain prior to this accident, and refused to produce relevant behavioral health records pre-dating her car accident. It was not arbitrary and capricious for First Unum to decide, based on the objective evidence of doctors and psychologists, that she was not entitled to long-term disability benefits.[2] *Hobson*, 574 F.3d at 88

---

[2] While the Court is mindful of the fact that First Unum's reviewers are compensated by the insurer, *see McCauley*, 551 F.3d at 133, the Court finds the explanations and analyses of First Unum's physician and psychologist reviewers to be persuasive and well-reasoned, and rejects the

("[I]t is not unreasonable for ERISA plan administrators to accord weight to objective evidence that a claimant's medical ailments are debilitating in order to guard against fraudulent or unsupported claims of disability."); *see also Leipzig v. AIG Life Ins. Co.*, 362 F.3d 406, 409 (7th Cir. 2004) ("Most of the time, physicians accept at face value what patients tell them about their symptoms; but insurers . . . must consider the possibility that applicants are exaggerating in an effort to win benefits").

Imaging of Pistilli's brain, conducted after her car accident, indicated no changes in comparison to a 2019 brain scan. In response to requests from First Unum for information and input from Pistilli's healthcare providers, only Dr. Wong responded,[3] and in a conclusory, non-responsive answer. First Unum's medical and psychological reviewers provided clear and compelling reasons for their findings that Pistilli was not disabled and precluded from working under the LTD Policy. And there is no evidence in the record that in affording more weight to the objective medical evidence and opinions of physicians, First Unum ignored Pistilli's subjective reports of her symptoms. *See Nall v. Hartford Life & Accident Ins. Co.*, 20 Civ. 1170 (VAC), 2021 U.S. Dist. LEXIS 264136 (D. Conn. Dec. 8, 2021), *aff'd* No. 22-49, 2023 U.S. App. LEXIS 6273, at *6 (2d Cir. Mar. 16, 2023). Indeed, there is substantial evidence in the record supporting First Unum's decision, and I hold that its denial of Pistilli's claim was not arbitrary and capricious.

---

argument that these doctors would contravene their professional obligations and concoct false conclusions to provide a modest financial benefit to their employer.

[3] Pistilli's email of April 24, 2023 indicated that Dr. Foo's failure to return First Unum's questionnaire and engage with the disability benefit plan's staff was intentional, and not the product of neglect. *See* ECF No. 29-7 at 38 (noting that "[u]nlike Dr. Foo, [Dr. Datta's] office has indicated a willingness to cooperate.").

19

Nevertheless, I allowed Pistilli to testify. *See Muller v. First Unum Life Ins. Co.*, 34 F.3d 119, 125 (2d Cir. 2003). She testified credibly and with conviction for several hours. However, she showed no symptoms of severe headache, or inability to focus over long periods of time, or a lack of ability to endure the discipline of a day at the office. She admitted to having suffered severe headaches for many years before the accident, and could not explain why she had refused to produce to First Unum the records of her pre-existing psychiatric conditions. Even if I were to apply a *de novo* standard of review, I would find that Pistilli has not proved her case by a preponderance of the evidence.

### D. Conclusion

Accordingly, based on the foregoing, I find that First Unum did not act in an arbitrary and capricious manner in denying Pistilli's claim for long-term disability benefits, and thus, she is not so entitled to an award thereof from this Court.

The Clerk of Court shall tax costs and enter judgment for First Unum, and close this case.

SO ORDERED.

Dated: October 3, 2025
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge